```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| LESLIE BRUNER, <br> CALVIN G. BANKS, SR., and <br> AMANDA PRESLEY <br> <br> Plaintiffs, <br> <br> v. <br> <br> LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT, <br> <br> Defendant. | Civil Action No. 5:06-425-JMH <br> <br> <br> **MEMORANDUM OPINION & ORDER** |

                    **     **     **     **     **

This matter is before the Court on Plaintiffs' motion for a preliminary injunction [Record No. 2]. Having reviewed the motion, response, and reply, and having heard oral argument on the matter on January 23, 2007, the Court finds that a preliminary injunction is not warranted.

**Factual and Procedural Background**

Plaintiff Leslie Bruner began her employment with Defendant Lexington-Fayette Urban County Government ("LFUCG") in 1999. Pursuant to Resolution No. 66-2000 passed by the LFUCG, effective February 2, 2000, Bruner was appointed as a "Legislative Aid to Council Trainee." (*See* Ex. A to Def.'s Resp. 3.) Bruner's job title changed to "Staff to Council II," but her job responsibilities and duties remained the same. Pursuant to Resolution No. 347-2002 passed by the LFUCG, effective June 17,

2002, Plaintiff Amanda Presley was appointed in the position of "Staff to Council I." (*See* Ex. B to Def.'s Resp. 4.) In November of 2002, Presley was promoted to "Staff to Council II." Finally, pursuant to Resolution No. 536-2005 passed by the LFUCG, effective July 18, 2005, Plaintiff Calvin G. Banks was appointed in the position of "Staff to Council II." (*See* Ex. D to Def.'s Resp. 3.) The three ordinances specifically state that the Plaintiffs' appointments are unclassified civil service appointments. (*See, e.g., id.* ("Section 6 - That the following Unclassified Civil Service Appointments made by the Mayor be and hereby are ratified: Calvin Banks, Staff to Council II . . . .").)

On December 14, 2006, the LFUCG passed Ordinance No. 403-2006 ("the Ordinance"), which eliminated the position of Staff to Council II. The Ordinance became effective on January 1, 2007. (*See* Ex. F to Def.'s Resp.) At the time the Ordinance was passed, all three Plaintiffs were employed in Staff to Council II positions, and as a result, Plaintiffs' positions were abolished.

Plaintiffs brought suit against the LFUCG alleging that they were employed as classified civil service employees and therefore had a legitimate expectation of continued employment in their positions. Plaintiffs allege that the LFUCG violated 42 U.S.C. § 1983 by depriving them of their constitutionally protected property interest without due process. In their pending motion, Plaintiffs seek preliminary injunctive relief from the LFUCG's actions.

**Standard of Review**

To determine whether a preliminary injunction should be granted, the Court considers the following factors:

> (1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction.

*Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). The factors are not prerequisites to entry of a preliminary injunction, but instead should be balanced against each other. *Id.; see United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004). The party seeking a preliminary injunction has the burden of persuasion to show that the factors weigh in favor of the Court granting the motion. *Leary*, 228 F.3d at 739. Plaintiffs face an onerous burden in their pursuit of preliminary injunctive relief — "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion." *Id.*

Further, the degree of likelihood of success depends on the strength of the other three factors. Thus, an injunction would be proper "where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where he at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued." *Unsecured Creditors' Comm. of DeLorean Motor Co. v. DeLorean*, 755 F.2d 1223, 1229 (6th

Cir. 1985). Even though a finding of no likelihood of success "is usually fatal[,]" *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000), the most prudent course of analysis is for the Court to analyze the strength of each factor. *Leary*, 228 F.3d at 739 n.3.

**Analysis**

*Likelihood of Success on the Merits*

Whether Plaintiffs have demonstrated a likelihood of success on the merits is dependent on whether each Plaintiff had a legitimate expectation of continued employment with the LFUCG. "[A] property interest exists and its boundaries are defined by 'rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). In *Roth*, the Court held that where the terms of a college professor's appointment as an assistant professor secured no interest in continued employment, he did not have a property interest protected by Fourteenth Amendment that was sufficient to require the college to provide him with due process before declining to rehire him for another year of teaching. Even though the professor's terms of appointment did not provide him with a legitimate expectation of continued employment, the Court examined whether there was a state statute or university rule or policy that

secured his interest in re-employment or that created any legitimate claim to it and found none.

Similar to the plaintiff in *Roth*, Plaintiffs cannot show that the LFUCG clearly promised them continued employment when it hired them. The ordinances state that Plaintiffs were hired in unclassified positions. (*See* Exs. A, B, & D to Def.'s Resp.) Plaintiffs knew they were being hired as unclassified employees. The LFUCG also points to language in its Code of Ordinances that specifically categorizes the "Staff to Council II" position as an unclassified position. Chapter 21 of the Code, the LFUCG's "Comprehensive Plan for Classified Civil Service System," does not include Plaintiffs' former position as a position with classified status. But Chapter 22, entitled "Unclassified Civil Service," in Section 22-5, includes a chart introduced by the phrase: "The following positions shall be included among these covered by the provisions of this chapter." The chart includes the position "Staff to Council II" as an unclassified position.

Before delving into Plaintiffs' argument, a brief description of the differences between classified employees and unclassified employees is merited in this case. Simply put, "[a] classified civil servant has a property right to continued employment which cannot be denied without predeprivation notice and an opportunity to be heard." *Christophel v. Kukulinsky*, 61 F.3d 479, 486 (6th Cir. 1995). Conversely, an unclassified employee does not have a property right to continued employment. *Id.* at 482 (citing *Vodila*

*v. Clelland*, 836 F.2d 231, 232 (6th Cir. 1987)).

Undeterred by the unambiguous language in the ordinances, Plaintiffs argue that under Kentucky law and the LFUCG's own charter, the LFUCG erred and *should* have hired them as classified civil service employees. Plaintiffs argue that even though the LFUCG failed to follow Kentucky law, they still have a legitimate claim of entitlement to a property interest in continued employment because they *should* have had classified status. According to Plaintiffs' interpretation of KRS §§ 67A.210(1)(c) and 67A.210(1)(h), subject to certain exceptions,[1] classified status applies to *all* persons employed by the LFUCG. KRS § 67A.210(1)(c) defines "civil service" as "the offices and positions of trust or employment in the service of the urban-county government not specifically excluded by KRS 67A.220 to 67A.340."

Plaintiffs claim that the LFUCG's Charter also supports their proposition. Section 9.02 of the Charter states that "[a]ll

---

[1] Plaintiffs argue that police and fire employees, employees specifically excluded by KRS §§ 67A.220 to 67A.340, and those within the seven exclusions under KRS § 67A.210(1)(h) are the *only* employees of the LFUCG who do not have classified status. Under KRS § 67A.210(1)(h), "employee" includes "any person employed in the conduct of municipal affairs including an administrative or directorial position" and excludes (1) elected officers; (2) members of all boards, commission and authorities; (3) the chief administrative officer as denominated in the comprehensive plan; (4) department commissioners of all executive departments; (5) all administrative assistants appointed by the mayor or highest elective executive officer, all secretaries excluded by the provisions of the comprehensive plan; (6) temporary or part-time employees and all persons employed to conduct special inquiries, investigations or studies for the urban-county government, and (7) constitutional officers and their appointees.

positions in the Lexington-Fayette Urban County Government shall be in the classified Civil Service" subject to several exceptions. Plaintiffs contend that they are not included in any of the exceptions.

The *Christophel* court examined a similar argument from a plaintiff who claimed that although she was hired as an unclassified civil servant, she should have had classified status:[2] "Implicit in Christophel's syllogism is a crucial premise, i.e., that, under Ohio law, an unclassified civil servant's contention that she should be placed in the classified service automatically bestows on her the rights which accompany classified status, and automatically imposes on defendants the duties owed to those having classified status." *Christophel*, 61 F.3d at 486. The Sixth Circuit reviewed Ohio law for support for Christophel's argument and found none. *Id.* Moreover, and particularly relevant to the issues presented by Plaintiffs in this case, the *Christophel* court discussed the "fundamental difference" between "the attainment of a state-recognized status, and the mere assertion of a right to that status." *Id.*

Plaintiffs have clearly only "asserted" a right to classified status. Per the Sixth Circuit's language, the Plaintiff's right can fairly be described as "no more than an inchoate claim, not yet

---

[2] Christophel claimed that her former employer, a state university, systematically labeled employees as unclassified when they should have been given classified status. *Christophel*, 61 F.3d at 486.

adjudicated or otherwise acted upon," and "[u]ntil the state bestows the right or benefit, there is no property right, and nothing for the procedural protections afforded by the Due Process Clause to protect."  *Id.; see Roth*, 408 U.S. at 576 ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.").  When the LFUCG hires an employee to fill a position with classified status, it follows the procedures outlined in Chapter 67A.  Plaintiffs were not hired pursuant to those procedures.  In order to have a legitimate expectation of continued employment with the LFUCG, one must have classified status, and to have classified status, one must have been hired pursuant to the procedures in Chapter 67A.  Because Plaintiffs were not hired pursuant to the procedures for bestowing classified status upon an employee, they have not shown that they have a constitutionally protected property interest in their employment.

   Plaintiffs bring a novel argument to the Court by essentially challenging the validity of an entire chapter of the LFUCG's Code of Ordinances that sets forth the provisions for hiring unclassified employees.  Charged with carrying the burden of persuasion, Plaintiffs must demonstrate that under Kentucky law, a civil servant who was hired as an at-will, unclassified employee, but who should have been hired as a classified civil servant, automatically enjoys the rights of classified status and may

enforce those rights against her employer. Plaintiffs have failed to support that premise with case law. As a result, the Court finds that they have not shown that they are likely to succeed on the merits of their claims.

*Irreparable Harm*

Plaintiffs argue that their termination without due process is "a constitutional injury that cannot be remedied by money." This argument is flawed because Plaintiffs have not established that they were deprived of a property right that is protected by the Due Process Clause of the Constitution. In *Bonnell v. Lorenzo*, 241 F.3d 800 (6th Cir. 2001), it was undisputed that the plaintiff had a constitutional right to freedom of speech that, in certain circumstances, could not be infringed upon by the government. Similarly, in *Jessen v. Village of Lyndon Station*, 519 F. Supp. 1183 (D.C. Wis. 1981), another case cited by Plaintiffs, the court found that the plaintiff's contract of employment constituted a property interest that could not be taken from him without due process. Plaintiffs argue that "the constitutional right of plaintiffs' deprived by LFUCG is their right to due process of law." Plaintiffs' argument is more properly framed as a challenge to the LFUCG's deprivation of their alleged *property interest* without due process of law, and it is axiomatic that a plaintiff must first possess a property interest before proceeding with the claim that the property interest was taken away without due process. Therefore, the Court finds that Plaintiffs have not

demonstrated that they will be subject to irreparable injury if a preliminary injunction does not issue.

*Possibility of Substantial Harm to Others and the Public Interest Served by the Issuance of a Preliminary Injunction*

Neither the LFUCG nor Plaintiffs provide lengthy discussions in their pleadings as to the last two factors in the Court's analysis. Based on their suspicion that their replacements have not yet been hired, Plaintiffs state that an injunction will not harm any third parties. Furthermore, Plaintiffs argue, as part of their overall claim that the LFUCG has been improperly categorizing its employees as unclassified in violation of Kentucky law, that the public will be served if Plaintiffs are allowed to return to their former positions. This last factor does not carry much weight, as it is based on Plaintiffs' showing of a likelihood of success on the merits of their claims, which, as noted above, Plaintiffs have not demonstrated. Balancing the failure to show a strong likelihood of success on the merits and the failure to show irreparable harm with the plaintiffs' argument that no third parties will be harmed if the Court were to enter a preliminary injunction, the Court finds that this third factor is clearly not dispositive and does not outweigh Plaintiffs' failure to make a convincing showing on the first two factors.

## Conclusion

Based on the foregoing, the Court finds that the factors weigh in favor of denying Plaintiffs' motion for a preliminary injunction.

Accordingly, **IT IS ORDERED** that Plaintiffs' motion for preliminary injunction [Record No. 2] be, and the same hereby is, **DENIED**.

This the 5th day of February, 2007.



Signed By:

*Joseph M. Hood*

**United States District Judge**